[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action by complaint returnable to this court October 5, 1993, seeking a dissolution of the marriage on the ground of irretrievable breakdown. He also sought a return of personal property and a "property settlement" pursuant to General Statutes § 46b-81. The defendant wife admitted all of the allegations of the plaintiff's complaint. She filed a cross complaint in which she, sought a dissolution of the marriage on the ground of irretrievable breakdown. She also sought alimony, attorney's fees, an assignment of the plaintiff's interest in the jointly-owned family home and other relief, as on file.
At trial, both parties, the husband's female companion, and two real estate appraisers testified. Each party submitted sworn financial affidavits and written proposed orders. A number of documentary materials were introduced into evidence. The parties waived oral argument and filed post-trial briefs.
From the evidence, I find as follows:
The parties were married to each other August 7, 1965, at Palestine, Illinois. The wife's birth name was Vera Cullen. The husband has resided in this state continuously for at least one year before the filing date of the complaint, September 29, 1993. The parties had two children, issue of the marriage, who have reached their majority. No other minor children were born to the wife since the date of the marriage. Neither spouse is a recipient of public assistance. All statutory stays have expired and the court has jurisdiction.
The husband is 51 years old and in good health. He has a college degree and obtained his master's degree in engineering CT Page 11135 nights while working full time. He has worked during his entire professional career at General Dynamics (Electric Boat). His present position is that of engineering manager where he supervises 41 people, most of whom are engineers. He presently earns, including a recent raise and bonus, slightly more than $1,700 per week gross, and reports about $1,200 per week net.
He enjoys substantial job benefits including life and health insurance for which his employer pays approximately eighty percent of the premium. He also has been contributing to a deferred compensation plan (SSIP); his employer matches fifty percent of his contributions. He also received a bonus of $1,200 in 1994. The court believes his calculation of net income reported on his financial affidavit is flawed in at least two respects First, he recently received a raise, which he averaged into his past earnings, thus showing current lower gross and net weekly incomes than actual. Second, he has been under a pendente lite order since October, 1993, to pay the wife, the sum of $500 per week as temporary alimony. It appears that he has not sufficiently reduced his federal and state income tax withholdings which total $371 per week to reflect the alimony payments so as to properly estimate his income taxes and more closely reflect his true net income.
The wife will be 50 years of age November, 1994. She is a high school graduate with some word processing training and experience. She has worked as a key punch operator, as a part-time secretary in a local school system during her child rearing years, then as a full-time secretary in a high school for four or five years after the children were out of school. She has done sewing in her home, making curtains and draperies. She also worked on crafts. When the parties separated in October, 1993, she went to Illinois where she now works part time as a sales clerk in a florist's shop. She also prepares flower arrangements. She earns $168[1] per week gross, $133[2] per week net. She is in good physical health, but experiences anxiety attacks from stress, as a result of which she sometimes faints and loses her power of speech. She takes B-12 and medication for anxiety and stress. Before the florist shop job, she worked as a full-time secretary for $6.25 per hour, but was compelled to leave because she could not handle the stress.
This marriage of over 29 years began to disintegrate a number of years ago. The parties basically pursued different lifestyles. The husband's avocation is music; he regularly plays in bands and CT Page 11136 quintets. He also rehearses frequently and sang in a church choir. The wife participated in these activities only as a spectator and begrudged the time he spent away from home at chorales, rehearsals, etc. The husband also liked to sail and played golf in a golf league. From time to time, he needed to work overtime.
The wife's interests centered around the home, the children and her gardens. Their disparate and divergent activities were a major source of conflict between them, but they did little to repair the problem. This was in part due to the husband's failure to candidly communicate with the wife about his discontent with their lifestyles. Instead, he attempted to limit his "out of home" activities to avoid confrontation. She generally disapproved of activities he immensely enjoyed.
The wife was mainly dependent upon the husband and attempted to communicate with him about her emotional needs. This, too, was not successful as his responses were shallow. She sought psychological counseling. She believed their marriage was better than most and was shocked and surprised when the husband advised her of his intention to obtain a divorce.
The husband became friendly with a female co-worker, and this friendship was at first professional. It soon evolved to that of confidants and then to that of lovers. The husband claims the relationship's romantic aspects only commenced after the parties' separation. He expects to marry the lady; however, he denies that this relationship contributed to the disintegration of the marriage. It is significant to note that the husband gave his sail boat, which he values at $4,000 — $5,000 to his female companion after the parties separated. He now lives with his companion; they share expenses and maintain a joint checking account.
The parties separated in the fall of 1993; the husband assisted the wife in moving back to Illinois, where she was born, even providing for her to live in his parents' home for a time. He also paid one-half of her moving expenses and certain funds were also then divided by the couple. They essentially divided their tangible personal property, including furniture and furnishings. She now resides alone in a condominium unit recently purchased by her. It is clear that the spouses have grown widely apart and that the marriage has broken down irretrievably. While it also is evident that both parties have contributed to the CT Page 11137 disintegration of their marriage, the wife worked at repairing it, while the husband only wanted out of it. On this evidence I must conclude that the husband must bear the greater share of the responsibility for its destruction.
The parties have amassed substantial assets during their marriage. These include:
A jointly-owned home, 37 Williams Street, Pawcatuck, Connecticut, which I find has a value of $122,000, less mortgage balance of $3,644, and equity of $118,356
The condominium unit owned by wife at 2148 Harbortown Circle, Champagne, Illinois, has a value of $72,000, less mortgage and loans totaling $67,600, and equity of $ 4,400
Husband's General Dynamics deferred compensation plan (SSIP) (valued as of 7/31/94) $439,339
Husband's IRA account $ 20,511
Wife's IRA account $ 21,259
Wife's IDS Life Flex Annuity $ 23,231
Wife's Bonds $ 2,854
Husband's cash in banks of about $ 1,100
Wife's cash in banks of $ 9,992
A joint checking account of (Westerly Community, husband with female companion, total $3,800) $ 1,900
A joint checking account of (Charter Oak, spouses) $ 1,300
Husband's bonds $ 3,512 --------- TOTAL $647,754
In addition, the wife has a 1990 Ford automobile, worth $4,825, jewelry of $3,000, and household furnishings she values at $10,000.
The husband has two elderly motor vehicles he values at $900 CT Page 11138 in the aggregate; and, a retirement plan which would provide him with $1,244 per month for life upon his retirement at age 65.
I find that the husband's monetary contributions to the acquisition, preservation and appreciation in value of the parties' assets far outweighed those of the wife. I also find that the wife's non-monetary contributions to the marriage, including those of homemaking and child rearing, substantially outweighed those of the husband.
I also find that the husband's earnings, earning capacity and vocational skills are superior to those of the wife. They have equal employability. The husband, however, has a greater opportunity than she has to acquire capital assets and income in the future. She is not presently exploiting her earning capacity to the fullest; even if she did, however, her earning capacity and earnings would only be a fraction of his.
The court has considered all of the criteria in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the light of the evidence and its findings. I have also considered the taxable consequences and implications of the financial awards set forth below.
Accordingly, judgment may enter as follows:
(1) The marriage of the parties is dissolved on the ground of irretrievable breakdown.
(2) The wife shall quit claim to the husband all her right, title and interest in and to No. 37 Williams Street, Pawcatuck, subject to the encumbrances thereon, which he shall pay and save her harmless therefrom.
(3) He shall pay to her, as a property settlement, the sum of $57,000 in cash within sixty (60) days hereof.
(4) By Qualified Domestic Relations Order QDRO), there is transferred and vested in the wife the following:
(a) The sum of $216,000 plus all earnings thereon from and after July 31, 1994, from the husband's General Dynamics Savings and Stock Investment Plan (SSIP); and, (b) the sum of $622.29 per month (being one-half of the present earned current benefit) of his retirement plan benefit at General Dynamics. CT Page 11139
(5) The wife shall take, have and own, free of all claims of the husband, the following property: the condominium unit at 2148 Harbortown Circle, Champagne, Illinois, and her Ford Taurus automobile subject to the encumbrances thereon; the tangible personal property now in her possession; her bonds, and her solely-owned checking and savings bank accounts, her IRA account and IDS annuity.
(6) The husband shall take, have and own free of all claims of the wife the following property: the balance of his SSIP and retirement plan after the portion set out to the wife in paragraph 4 above; the tangible personal property now in his possession; his two motor vehicles; his IRA account; his Westerly Community Credit Union joint account; his bonds; and his solely-owned checking and savings bank accounts.
(7) The jointly-held bank account at Charter Oak Federal Credit Union ($1,300 balance) shall be divided equally between the parties.
(8) The husband shall pay to the wife, as periodic alimony, taxable to her and deductible by him, the sum of $425 per week. Said alimony and additional alimony payments set forth in paragraph 9 shall terminate upon the death of either party, the wife's remarriage, pursuant to the provisions of General Statutes § 46b-86(b), or the husband's retirement at age 65. The court notes in this regard that upon receipt of the $57,000 cash payment pursuant to paragraph 3 above (which is non-taxable to her) the wife may apply it to her home mortgage, and will be able to reduce her weekly outgo by over $100 per week. The court further notes that the wife would be eligible at age 59 1/2 to withdraw from that portion of the SSIP transferred to her, without penalty, and at age 62 to receive social security benefits.
(9) The husband shall also cooperate with the wife to permit her to remain covered for medical and health benefits through his employment-related health insurance under applicable-law. He shall pay as additional alimony toward her coverage, the sum of $20 per week. In the event wife's employment provides health insurance, then husband shall pay one-half of the premium; his portion shall not, however, exceed $20 per week.
(10) The husband shall irrevocably designate the wife as CT Page 11140 beneficiary of his employment-related life insurance policy which shall provide death benefits of not less than $50,000 so long as he is obligated to pay alimony pursuant to this decree He shall execute and deliver an authorization to her to enable her from time to time to obtain information from the insurance carrier relating to the good standing and status of said policy.
(11) Each party shall pay the liabilities shown on Schedule 3 of their respective financial affidavits.
(12) The husband shall pay to the wife the sum of $2,750 toward her attorney's fees on or before January 1, 1995. The court recognizes that the wife has some liquid assets, however, I find that the denial of attorney's fees in toto would impair or undermine the other financial awards. The court denies the husband's request for attorney's fees relating to the first day of trial, as it has taken that claim into account in awarding the defendant attorney's fees.
(13) All documents of title and instruments necessary or incidental to effectuate the orders herein shall be completed; and exchanged within sixty (60) days hereof. The court shall retain jurisdiction over the QDRO transfers until consummated and accepted by the plan administrators thereof.
Teller, J.